JOSHUA VANSANT, Comptroller of the CITY of BALTI-
MORE *vs.* THE HARLEM STAGE COMPANY OF BALTI-
MORE CITY.

*Construction of the Act of Assembly of* 1880, *ch.* 69—*Ordinance
of the Mayor and City Council of Baltimore, approved the
28th of April,* 1882.

The Act of 1880, ch. 69, which conferred upon the Mayor and City
Council of Baltimore the power to license and regulate certain
vehicles and employments, did not confer upon the City the author-
ity to tax such vehicles and employments as therein mentioned, for
revenue purposes;—the power was a police power which must be
reasonably exercised.

The ordinance of the Mayor and City Council of Baltimore, approved
the 28th of April, 1882, in so far as it requires the owner or owners
of passenger omnibuses to pay for every such omnibus used for
hire within the corporate limits of the City of Baltimore, seventy
five dollars for the original license, and fifty dollars for the annual
renewal thereof, is unlawful and void, the amount so imposed
being unreasonably in excess of what the Mayor and City Council
were authorized and empowered to charge under the Act of 1880,
ch. 69.

APPEAL from the Court of Common Pleas.

Section 138, of Article 4, of the Code of Public Local
Laws, provided as follows: "The Mayor and City Council
have power to license and regulate hackney coaches, or
other carriages kept for hire and employed within the
city, and also draymen, wagoners, carters, porters, and
watermen, residing and employed within the said city,
with power to make all necessary regulations respecting
the same."

By the Act of 1880, ch. 69, this section was repealed
and re-enacted, so as to read as follows:

Vansant, Comptroller *vs.* The Harlem Stage Co. of Balto. City.

"Sec. 138. The Mayor and City Council of Baltimore shall have power to license and regulate all carriages and other vehicles owned and used within the city, whether kept and used for the purposes of business or pleasure; and also all hackney coaches, carriages, carts, drays, omnibuses, wagons and other vehicles kept for hire, or hired in said city; and also to license and regulate the employment of all hackmen, draymen, wagoners, carters, porters, and watermen plying for hire within the limits of said city, and to pass all necessary and proper regulations respecting the same; provided, however, that all the revenue arising from said licenses shall be applied to the paving or repaving of the public highways of the city."

By ordinance approved the 28th of April, 1882, section 32 of Article 8 of the Baltimore City Code of 1879, was repealed and re-enacted, so as to read as follows:

"Section 32. The owner or owners of any carriage, boat, or scow, obtaining license therefor, shall pay the Comptroller, for the use of the city, for every hackney coach, cab, buggy, wagon, or other four wheel pleasure carriage kept for hire, five dollars and fifty cents for the original license, and five dollars for the annual renewal thereof; for every chair, gig, cab, buggy, or other pleasure carriage drawn by one horse, and kept for hire, three dollars and fifty cents for the original license, and three dollars for the annual renewal thereof; for every wagon drawn by more than three horses or mules, ten dollars and fifty cents for the original license, and ten dollars for the annual renewal thereof; for every wagon or cart drawn by more than one, and not more than three horses or mules, five dollars and fifty cents for the original license, and five dollars for the annual renewal thereof; for every wagon or cart, or other carriage of burden drawn by not more than one horse or mule, ten dollars and fifty cents, and for each renewal, ten dollars; for each boat or scow, two dollars and fifty cents for the original, and two dollars for

332    MARYLAND REPORTS.

Vansant, Comptroller *vs.* The Harlem Stage Co. of Balto. City.

each renewal; for every package cart, one dollar, and for every transfer of any of the licenses authorized by this ordinance, fifty cents; for every omnibus drawn by two or more horses or mules used for hire within the corporate limits of the City of Baltimore, in the conveyance of passengers from place to place, and which is known and recognized as a passenger omnibus, seventy-five dollars for the original license, and fifty dollars for the annual renewal thereof;" * * * * *

On the 2nd of May, 1882, the appellee, as the owner of twenty-three public omnibuses, used for the transportation of passengers from place to place within the city for hire, for which, in May, 1881, it had taken out a license for the year ending 1st May, 1882, applied for renewal of licenses therefor, and tendered $115 in payment, being at the rate of $5 for each omnibus; and as the owner of three omnibuses not previously licensed, it applied for original licenses, and tendered $16.50 in payment, being at the rate of $5.50 for each omnibus. The appellant refused to issue licenses for these omnibuses unless the appellee would pay the amounts prescribed by the above-mentioned ordinance, approved April 28th, 1882. This the appellee refused to do, and on the 11th of May, 1882, filed its petition for a mandamus, to compel the appellant to issue the licenses in question to it, in the performance of what it claimed was a mere ministerial duty on his part, and one in reference to which he had no discretion, upon the payment to him of the sums so tendered. On May 19th, 1882, the appellant filed his answer, admitting that he had refused to issue licenses, as demanded by the appellee, upon payment of the amount fixed by the former ordinance, for the reason that such ordinance was no longer in force, having been repealed by that of the 28th of April, 1882. To this answer the appellee demurred; and on the 8th day of July, 1882, the Court (Brown, J.) passed an order sustaining the demurrer, and directing a

peremptory writ of mandamus to issue as prayed by the appellee in its petition. From this order the present appeal was taken.

The cause was argued before MILLER, STONE, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*Thomas W. Hall, City Solicitor,* and *John P. Poe, City Counsellor,* for the appellant.

*W. Starr Gephart,* and *Bernard Carter,* for the appellee.

STONE, J., delivered the opinion of the Court.

The Act of 1880, chap. 69, of the Public Local Laws, conferred upon the Mayor and City Council of Baltimore, the power to license and regulate certain vehicles, owned and used in the city, and also to license and regulate certain occupations carried on therein. The true construction of this Act, and to define what power it intended to grant to the city, and whether the city, in its dealing with the appellee, has exceeded the powers it derived from that Act, are the two questions presented to us on this appeal.

First, as to the true construction of the Act of 1880. This Court has laid down some general rules for the construction of the grant of powers to municipal corporations, in the case of *St. Mary's Industrial School for Boys vs. Brown, et al.,* 45 *Md.,* 310, 332, which will materially aid us in the determination of the present case.

"It is a well settled rule of construction," says the Court, "of grants by the Legislature to corporations, whether public or private, that only such powers and rights can be exercised under them, as are clearly comprehended within the words of the Act, or derived therefrom by necessary implication, regard being had to the objects of the grant.

Any ambiguity or doubt arising out of the terms used by the Legislature must be resolved in favor of the public." Again the Court says, quoting from Dillon, "It is important to bear in mind that the authority to municipalities to impose burdens of any character upon persons or property is wholly statutory, and as its exercise may result in a divestiture and transfer of property, it must be clearly given and strictly pursued."

Applying these wise and salutary rules to the construction of the Act of 1880, chap. 69, and we think it was the manifest intention of the Legislature, to give to the Mayor and City Council, the power to license and regulate the employments and vehicles described in the Act under what is generally termed the Police power, as a means of the regulation of the business carried on, and not with a view to revenue. There is certainly no express grant of the power of taxation for revenue in the Act, nor can any such power be drawn from it by necessary implication.

The word tax is not once mentioned in the Act, and if the primary object of the law was to authorize the city to levy and collect a tax for the purpose of raising revenue, it is singular indeed, when apt and appropriate words to express such purpose abound, that none such were used.

The term "revenue" used in the proviso, is used in the same sense as—"the money received" from the license, and in fact, only makes a *particular* appropriation of the license money, when without such proviso, it would have gone for general municipal uses.

If the power to tax for revenue purposes was the purpose of the Act of 1880, then the power over the particular subjects mentioned in the Act, would (with the exception of the constitutional restrictions,) be unlimited. It would require the most unequivocal language to satisfy us, that the State intended to delegate such a power, over any class of her citizens, or any description of property within her borders, to a municipal corporation.

It is true that the power to license and regulate, carries with it, by necessary implication, the power to levy some tax. But in such cases the tax is a mere incident to the main purpose of the law. It is only intended as a means provided for carrying the law into effect.

It is the bill of costs attendant upon the expense, trouble and labor of licensing and supervising. " A right to license an employment," says Judge COOLEY, in his work on *Con. Lim.*, 201, "does not imply a right to charge a license fee therefor, with a *view to revenue,* unless such seems to be the manifest purpose of the power; but the authority of the corporation will be limited to such a charge for the license, as will cover the necessary expenses of issuing it, and the additional labor of officers and other expenses thereby imposed. A license is issued under the Police power ; but the exaction of a license fee, with a view to revenue would be the exercise of the power of taxation ; and the charter must *plainly* show an intent to confer that power, or the municipal corporation cannot assume it."

The distinction between the power of taxation and the usual police powers, which are granted for the maintenance of peace and order, in a city is well settled. The functions of the latter are not primarily the raising of revenue. Incidentally, the public treasury may be benefited by the license fees, where the power is specifically to license. But in all such cases the Court must see, that the requirement of fees for the exercise of privileges is a *reasonable* exercise of the power of legislation granted the corporation. If under the guise of licensing and regulating, the municipal corporation should attempt to raise revenue, or clearly violate the rule requiring a reasonable exercise of its powers, the Courts will declare such ordinance unlawful and void. *State vs. Mayor and Council of Hoboken*, 33 *N. J.*, 280 ; *The Mayor, &c. vs. Second Avenue R. R. Co.*, 32 *N. Y.*, 261 ; 1 *Dillon on Mun. Cor.*, 357.

We are therefore of opinion, that the Act of 1880, chap. 69, did not confer on the city the authority to tax the em-

ployments and vehicles therein mentioned for revenue pur-poses, but that the power was a Police power which must be reasonably exercised.

The next question which arises, is whether the license fee charged and demanded by the city from the appellee, under the ordinance approved on 28th of April, 1882, is a reasonable and lawful exercise of the power granted to it by the Act of 1880, chap. 69?

It may well be conceded that the Mayor and City Coun-cil of Baltimore are, primarily at least, the judges of what is a reasonable fee for licensing and regulating the omnibus lines, and that it is not within the legitimate province of a Court to fix the precise amount to be charged them. But it is clearly the right and duty of the Courts, upon proper application, to decide whether the amount so fixed and settled upon by the Mayor and City Council, is unrea-sonably in excess of the sum which they were authorized and empowered to charge under the Act of 1880, chap. 69. We may even go further, and say that where there is a doubt whether the amount so fixed was reasonable or not, that a Court should be slow to reverse the judgment of the City Council, and that every fair intendment should be made in its favor. But the present case is free from any such doubt.

The ordinance of 28th of April, 1882, imposes a license fee of five dollars and fifty cents for the original license, and five dollars for the annual renewal thereof, on each hackney coach. It is the same for every wagon or cart drawn by not more than three horses. For every wagon drawn by more than three horses, ten dollars and fifty cents for the first, and ten dollars for renewed license. While the first tax on each passenger omnibus is seventy-five dollars, and each renewal fifty.

There is no more expense, that we can perceive, in is-suing a license and regulating an omnibus than a hackney coach, and yet one in the ordinance is charged just ten

times as much as the other for the annual license.    While
the hackney coach is charged the additional sum of fifty
cents, for the first issue of the license, the omnibus for the
*same thing*, is charged twenty-five dollars, just fifty times
as much.    If the fee is a reasonable one in the one case,
it is certainly unreasonable in the other.

If the argument which has been pressed upon the Court,
that the injury to the streets of the city could be con-
sidered, (which in the view we have taken we do not think
can be,) it would still be a strange apportionment of taxes
to place fifty dollars on a passenger omnibus, while the
large six horse wagon, heavily loaded, perchance with
stone, is only burdened with ten dollars.

But we have no need to resort to comparisons to enable
us to determine the invalidity of so much of the ordinance
of 28th April, 1882, as relates to passenger omnibuses.
If there were no other subjects except the omnibuses
mentioned therein, the amount attempted to be levied
upon these omnibuses, shows clearly upon its face that it
was an attempt on the part of the city authorities to
exercise the power of taxation which had not been granted
them by the State.    The language which the Court of
Appeals of New York, applied to a similar tax sought to
be imposed by the City of New York on a horse railroad
(*Mayor, &c. vs. Second Avenue R. R.,* 32 *New York,* 261,)
may well be applied to this case, substituting the word
omnibus in the place of car.

So with this ordinance, call what it requires by the
name of license, or certificate of payment, or anything
else, its primary and indeed only purpose is to take from
the Company under coercion of the penalty which it
imposes, the sum of fifty dollars annually for each omnibus
run, for the benefit of the city.

It is in vain, therefore, to speak of it or treat it as a
license, or a regulation of Police.    It is an imposition of
an annual tax upon the Company in derogation of its

rights of property, and on that account so much of that ordinance as relates to the passenger omnibuses, is unlawful and void.

> *Order for mandamus affirmed, and*
>> *cause remanded.*