STATE OF MARYLAND *vs.* ANDREW J. ROWE.

*Municipal Corporation—Market—License—Taxation.*

By section 671 of Article 4 of the Public Local Laws, (Code of 1888) power is conferred upon the Mayor and City Council of Baltimore to erect and regulate markets; and by section 678 of the same Article it is enacted that the same authorities "may lease, sell, or dispose of the stalls and stands in any market in any manner, and for any term they may think proper." HELD:

That where an ordinance setting apart a certain portion of a market for the sale of fresh and frozen fish and crabs, by a section thereof requires an annual license of a hundred dollars to be paid by every one before engaging in the fish and crab business in that market, such section is void, as being an effort to raise revenue under the guise of exercising the police power.

APPEAL AS UPON WRIT OF ERROR, from the Criminal Court of Baltimore.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*Albert Ritchie, City Counsellor,* for the appellant.

*Robert H. Smith,* and *A. S. Niles,* for the appellee.

IRVING, J., delivered the opinion of the Court.

By ordinance No. 17, of the year 1889, the Mayor and City Council of Baltimore, set apart a certain portion of "Centre Market," particularly described in the ordinance, for a "wholesale market for the sale of fresh and

frozen fish and crabs." This was provided for in the first section of the ordinance. By the second section of the ordinance it was provided, "that no person shall be permitted to use said market for the sale of fresh and frozen fish and crabs as aforesaid without first obtaining a license therefor from the clerk of said market." The third section forbade the sale of fresh and frozen fish and crabs by the wholesale elsewhere than in this, Hanover or Fell's Point market, unless it was at points certain distances from the several markets of the city in the ordinance fixed; and established penalties for the violation of that section. By the fourth section it was provided that "all persons carrying on business in said wholesale fish and crab market shall pay to the clerk of said market the sum of one hundred dollars yearly for the license provided in section two of this ordinance." The fifth and last section repeals inconsistent ordinances. This ordinance failed to provide any penalty for selling without license, and that omission was supplied by ordinance No. 65 of the same year, which by a single section fixed the penalty for selling without license at twenty dollars.

The appellee was indicted for selling without license; and a demurrer to the indictment was sustained on the ground that the fourth section of the ordinance was void, because the Judge of the Criminal Court of Baltimore, regarded the ordinance as intended to raise revenue for the city, and not to be in the exercise of its legitimate police power. The large license fee which is required by the ordinance was regarded by the Court as a clear indication of an effort to raise revenue under the guise of the exercise of its police power, and therefore falling within the condemnation of *Vansant, Comptroller vs. Harlem Stage Company of Baltimore City*, 59 *Md.*, 334.

It is well established law that municipal authorities can exercise no powers which are not in express terms,

or by fair and reasonable intendment conferred upon them. In the case of *St. Mary's Industrial School for Boys vs. Brown, et al.*, 45 *Md.*, 332, this Court adopts the language of the Supreme Court of the United States in *Minturn vs. Larue*, 23 *Howard*, 435, that: "Any ambiguity or doubt arising out of the terms used by the Legislature must be resolved in favor of the public." It must be by express grant, or fair and reasonable intendment, that a municipal corporation can get authority over the rights or property of the citizen, else "the trades and business of the people would be at the mercy, and be dependent upon the caprice, of those who might exercise municipal power, instead of being regulated by the general law of the land." And it is "the plain duty of the Courts to see that the corporate authorities do not transcend the authority delegated to them." *State vs. Mott,* 61 *Md.*, 303, 4; *Vansant's Case*, 59 *Md.*, 334.

By section 671 of Art. IV, of the Public Local Laws (Code of 1888,) the Legislature has granted to the Mayor and City Council of Baltimore City, the "power to erect and regulate markets;" and by section 678 of the same Article it is enacted that "the Mayor and City Council may lease, sell, or dispose of the stalls and stands in any market in any manner, and for any term they may think proper." A fair and reasonable construction of this power can only give to the city authorities, as the owners of the market houses, the power of selling and leasing the stalls in their buildings as they may judge best; and the power to *regulate* the markets which is given by section 671, can only be held to intend to give reasonable police powers with reference thereto. The power to *regulate* markets, is, according to Mr. Dillon in his work on Municipal Corporations, nothing more than a police power. *Dillon on Mun. Corp., 3rd Ed., sec.* 141.

The taxing power belongs to the Legislature; and it will not be held as conferred on a municipal corporation

State *vs.* Rowe.

unless it be by express and unequivocal language, or by *necessary* implication. *Vansant's Case*, 59 *Md.*, 334. In respect to the markets, we have already said, it is clear that the city has no power beyond the right to sell, lease, and dispose of stalls in their markets; and to exercise a police power in regulating the same.

So far as this "Centre market" is concerned, by ordinance No. 78, of Art. 35, of the City Code of 1879, the city has provided for the renting, and the rates for the same, of the stalls in that market. That ordinance is not repealed, in terms, by ordinance No. 17, of the year 1889, nor by any *subsequent* ordinance that we can find; and, unless it be so repealed in whole or in part by this ordinance No. 17, by necessary implication, it is still in force, and must be presumed to be executed according to its terms. There is no repugnancy between the two ordinances to work such repeal, that we can discover. The ordinances have different objects in view. The first is the exercise of the power to lease, rent and dispose of their property as the Legislature had authorized and empowered them to do under section 678 of the Local Laws of Baltimore City, already referred to. The other ordinance can only be understood as attempting to exercise their police power to regulate the markets, given by section 671 of the same Local Laws. There is not one word in the ordinance, No. 17, about leasing or renting the stalls. It does set apart certain portions of "Centre market" for the "wholesale fish and crab business;" but it does not profess to fix any rental value or charge for the use of particular locations, places, and stalls in that market; but by its fourth section imposes a license for everybody to pay before he shall engage in the fish trade in that market. The ingenious defence made by the counsel for the city that this is not a pure license of the business, but embraced also the rental charged of the licensees for the use of the stalls, finds no support, we

State *vs.* Rowe.

think, in the language of the ordinance.    It simply pro-
hibits  the exercise of  the  trade  at  that  place  without
payment  of  the  license  tax.    The  trades  people  must
have some special stand, stall or location.    In the nature
of things these are not all equally eligible.    Particular
places will be sought after, and as this ordinance No. 17
makes no  provision  for settling  those  rivalries  by con-
tracts of sale or leasing, as does the ordinance No. 78 of the
Code of 1879, we can but suppose and  presume  that the
several  persons  who  engage  in  the wholesale  fish  and
crab  business  in  that market  occupy  their  several
positions as of right, and  by virtue of  some contract with
the city under  the  ordinance  No. 78.    That  ordinance
supplies the only means of effectually preventing conten-
tion and strife for desirable places.    Having paid  there-
fore,  as we may presume, for his *place* in the market, the
seller is still further required to pay this license fee for
the  conduct  of  his  business, before  he  can  carry it on.
This,  then,  brings  us  to  the  question  whether  the
amount charged for the license is so large as to stamp it
as an effort to make it a means of revenue, under the guise
of exercising police power.    By the Act of 1880, chapter
69, the  Legislature  gave  the  Mayor and  City  Council
power  to  license  carriages  and  all  vehicles,  including
carts,  drays,  omnibuses,  wagons,  etc., and  to  license
and regulate the employment of hackmen, draymen, etc.
The  last clause of the Act was as  follows:    "Provided,
however, that all the *revenue* arising from said licenses
shall be applied to the paving or repaving of  the public
highways of the city."    In construing  this statute this
Court, in  *Vansant's  Case*, 59  *Md.*, 334, decided  that  it
would require the most unequivocal language to  satisfy
the Court that the Legislature intended  to  *delegate* a
taxing power by that Act to the city.    And as the word
"tax" was no where to be found in the  law, they could
not  hold  under  that  law  any  thing  more  than  the  be-

stowal of a police power; and that although the power to license and regulate gave the power to impose *some* tax, it was the mere *incident* to the *main purpose* of the law, and only the means of carrying the law into effect. Notwithstanding the use of the word *"revenue"* in the proviso quoted, the Court held that *revenue* was not the object, and that this word meant in that connection "the money received;" and that it was provided for to meet "the expenses, trouble, and labor of licensing and supervising." The Court says that "incidentally, the public treasury may be benefited by the license fees when the power is specifically to license," but that the Courts must see that the power was reasonably exercised. The Court adds that "if under the guise of licensing and regulating, the municipal corporation should attempt to raise revenue, or clearly violate the rule requiring a reasonable exercise of its powers, the Courts will declare such ordinances unlawful and void." Citing numerous authorities to sustain that view, the Court pronounced the Act of 1880, ch. 69, but the grant of a police power, and held that a tax of seventy-five dollars on each omnibus, and fifty dollars for every renewal, was a clear attempt on the part of the city to exercise a power which had not been granted; and *pro tanto* the ordinance was held void. Now, whether the fact be as we have said, we might fairly presume, that the places occupied in the market by these dealers are already rented and paid for under ordinance No. 78, or they are left to scramble for a position after being licensed under the ordinance we are considering, it can make no difference in the conclusion we must reach as to the real purpose of the city in enacting this license provision. In view of the decision in *Vansant's Case* we see no escape from holding the fourth section of the ordinance in question void. The tax or license fee is many times as much as the license fee exacted by the State of the same peo-

ple, and that is confessedly for revenue.    It is largely
in excess of that charged for license of omnibuses, which
this Court pronounced void in   *Vansant's  Case,* and it
is certainly largely in excess of any supposable expense
for issuing the license.    Unable to distinguish this case
from *Vansant's  Case,* we must  hold  the demurrer  was
rightly sustained.

*Judgment  affirmed.*

(Decided 20th June, 1890.)