ALBERT G. TOWERS et al., Constituting the Public
Service Commission of Maryland

*vs.*

CHARLES WILDASON.

*Common Carriers—Who Are—Automobile Owner.*

That defendant used his automobile to transport five other
men, as well as himself, to and from the place where they all
worked, for which service the others paid him an agreed com-
pensation, did not make him a common carrier, since he did not
operate his car "for public use," and he was consequently not
required to obtain a permit, under Act 1916, Chapter 610, from
the Public Service Commission, in order to operate his car.

p. 683

*Decided January 16th, 1920.*

Appeal from the Circuit Court for Harford County, in
Equity (HARLAN, J.).

The cause was argued before Boyd, C. J., Burke, Thomas,
Pattison, Urner, Stockbridge and Adkins, JJ.

*Wm. Cabell Bruce,* with whom was *James J. Archer* on
the brief, for the appellants.

*Harry S. Carver,* for the appellee.

Thomas, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Har-
ford County dismissing the bill of complaint of the Public
Service Commission of Maryland for an injunction against
Charles Wildason to restrain him

"from operating one or more motor vehicles in the pub-
lic transportation of passengers for hire from the town
of Bel Air, in Harford County, * * * to the town of

Aberdeen, in said county, * * * or from the said town
of Aberdeen * * * to the said town of Bel Air, * * *
or over any State, State-aid or improved county road,
* * * without first having secured a permit so to do
from the Public Service Commission of Maryland, as
required by law."

The bill charged that the defendant was "operating a
motor vehicle owned by him in the public transportation to
and fro of passengers for hire over the State road between
the town of Belair," in Harford County, and the town of
Aberdeen in said county, without having secured a per-
mit from the Public Service Commission of Maryland to
operate over said road, and was filed under the authority
conferred upon the Public Service Commission by Section
28 of the Act of 1910, Chapter 180.

The answer of the defendant denied that he was a "com-
mon carrier," as defined in the bill of complaint, and alleged
that at the time of the filing of the bill he was the "owner
of a hiring car and paid the regular hiring license for said
car to the Automobile Commissioner of the State of Mary-
land, authorizing him to hire said car to any person or per-
sons desiring to hire the same"; that at the time the bill was
filed he was employed at the "Proving Ground at Aberdeen,
* * * and five other men were employed at the same place,
and desiring to leave the town of Belair early in order to
get to their places of employment in time, they hired the car"
referred to "from the defendant, and paid him for the same,"
each person contributing his proportionate part of the hiring
charge; that said parties "went back and forth each day
with" the defendant; that the defendant "during all of said
time hauled no one else except the five men referred to"; that
"at times he had the opportunity of hauling others, even of
his own relatives, but refused to do so"; that "he never
stopped anywhere to take on or discharge any of the occu-
pants of said car between Belair and the destination at the
Proving Grounds at Aberdeen"; that since the bill in this

case was filed the defendant has been engaged in other business, and has not operated his car between Belair and Aberdeen for some time.

The evidence shows that prior to June, 1918, the defendant, who lived just outside of Belair, and was employed by the Maryland Dredging Company near Aberdeen, and Harry Lingan, John E. Calder, Hall Calder, Harry R. Coale and William E. Dolan, who lived in or near Belair, and were employed at the Aberdeen Proving Ground, in going to and returning from Aberdeen had been using a bus line then in operation between Belair and Aberdeen, and at Aberdeen they took a train that carried them to their places of employment; that the bus frequently got to Aberdeen too late to enable them to catch their train, and was sometimes so crowded that they could not get a seat; that in June, 1918, the defendant, in order to avoid the delays and loss and inconvenience incident to the use of the bus line, purchased a five-passenger Overland car, took out a "hiring license," for which he paid about $23.00, and entered into an arrangement with Harry Lingan and the others named by which he took them in his car to the place of their employment in the morning and brought them back in the evening for a definite compensation per week; that the route they took from Belair to Aberdeen was over the State road; that the defendant never at any time took any one with him except the five persons named, with whom he made said arrangements, and if one of them remained at home he took no one else in his place and his seat remained vacant, and that after the bill of complaint in this case was filed he ceased to operate his car and sold it.

It is conceded that the defendant did not secure from the Public Service Commission a permit to operate the car, and the bill was filed upon the theory that the use he made of his car brought him within the provisions of Section 1 of Chapter 610 of the Acts of 1916, as amended by Chapter 199 of

the Acts of 1918 (Sec. 189 of Art. 56, Vol. 4 of the Code), which provides that

"It shall be the duty of each owner of a motor vehicle to be used in the public transportation of passengers for hire operating over State, State-aid, improved county roads, and streets and roads of incorporated towns and cities in the State of Maryland to secure a permit from the Public Service Commission of Maryland to operate over said roads and streets, and present same to the Motor Vehicle Commissioner annually at the time and according to the method and provisions prescribed by law for owners of all other motor vehicles, to make an application in writing for registration with the Commissioner of Motor Vehicles, and to state in said application, besides the other matters by law provided, the seating capacity for passengers of said motor vehicle, the route on which said motor vehicle is to be used, whether reserve or substitute cars are maintained by the applicant to be used only in emergencies and, if so, the number of such reserve and substitute cars and a complete description of each, and when in use same to be designated by a special marker to be furnished by the Commissioner of Motor Vehicles, the length of route in miles on State, State-aid, improved county roads, and streets and roads of incorporated towns and cities, respectively, in the State of Maryland, the weight of the vehicle, and the schedule under which it shall operate during the ensuing year, and for all such motor vehicles, except reserve or substitute vehicles, the following annual fees shall be paid to the Commissioner of Motor Vehicles for certificates of registration issued by him, and no other additional fees, license or tax shall be charged by the State or any municipal subdivision thereof except the regular property tax in respect to such vehicles or their operation."

This section also creates three classes of such motor vehicles, and provides that those in Class A., weighing less than three thousand pounds, shall pay an annual fee of one-

twentieth of a cent "per each passenger seat" multiplied by the number of miles to be traveled over said roads during the year for which the certificate shall be issued; that those in Class B., weighing over three thousand and less than seven thousand pounds, shall pay one-fifteenth of a cent for each passenger seat multiplied by the number of miles as stated in Class A., and that those in Class C., weighing over seven thousand pounds, shall pay a fee of one-sixth of a cent for each passenger seat multiplied by the number of miles as stated in Class A.

At the same session the Legislature passed the Act of 1916, Chapter 687, providing for the registration and licensing of all motor vehicles except "motor vehicles engaged in the business of common carriers." This Act, as amended by Chapter 85 of the Acts of 1918 (Sec. 141 of Art. 56, Vol. 4 of the Code), under the title "Fees for Registration of Motor Vehicles," divides motor vehicles into Classes A., B., C., D., E., F., G. and H., and Class F. is as follows:

> "One dollar and twenty cents ($1.20) per horse-power or fraction thereof in the case of all motor vehicles operating for the purpose of transporting persons for hire upon any of the public highways of this State other than motor vehicles operating on fixed schedules, the registration fees of which are fixed by other specific provisions of law, and provided that said charge shall be in lieu of all other taxes, fees or charges of every kind upon said motor vehicles or upon the receipts of those operating the same except the taxes imposed upon the same as personal property."

These two Acts of 1916 were before this Court in the case of *Smith* v. *State,* 130 Md. 482, and in reference to them JUDGE STOCKBRIDGE, speaking for the Court, said: "The Legislature of 1916 passed two Acts to regulate the licensing of automobiles. Both were approved by the Governor upon the same date. Of these Chapter 687 was in the nature of a general Act, relating to all vehicles operated by a power other than muscular, using the highways and roads of this State.

"The terms of this Act were of a most sweeping character, the only exemption from its provisions being in the case 'of motor vehicles engaged in the business of common carriers or placing such in a special class for regulation in other respects.'

"The other Act was Chapter 610, and was an Act to regulate license fees and the operation of motor vehicles to be used in the public transportation of passengers for hire. It was distinctly an Act relating to the licensing of motor vehicles used as common carriers. The rate of license required and the mode of determining it differed in the two Acts. In Chapter 610, because of its dealing with such vehicles as common carriers, there was the prerequisite required of a permit from the Public Service Commission of the State, and its assent to operate over a certain route and upon a named schedule. * * *

"The intent of the legislative enactment is perfectly clear. What that body was attempting to do, was to distinguish as between motor vehicles operated as common carriers, and those not regularly so operated; the former would be subject to the provisions of Chapter 610; the latter governed by the provisions of Chapter 687."

With this construction of the two Acts of 1916, it is apparent that unless the use the defendant made of his car brought him within the definition of a common carrier he was not subject to the provisions of Chapter 610. Chapter 180 of the Acts of 1910 (Sec. 413 of Art. 23 of the Code of 1912), declares that the term "common carrier" shall include all railroad corporations, etc., "and all persons and associations of persons, * * * operating such agencies for public use in the conveyance of persons or property within this State," and Section 1½ of Chapter 445 of the Act of 1914 (Section 413-A of Art. 23, Vol. 3 of the Code), provides that "The term 'common carrier,' * * * shall likewise include all automobile transportation companies, and all persons and associations of persons, whether incorporated or not,

operating automobiles or motor cars, or motor vehicles, for public use in the conveyance of persons or property within this State." It is clear from the evidence in the case that the use that the defendant made of his car did not constitute him a common carrier as that term is defined by the statutes referred to. He did not operate his car "for public use," but only for his use and the use of the five men we have named. The evidence is clear and undisputed that he never carried anybody from Belair to Aberdeen, or from Aberdeen to Belair, except the five men named in his testimony, and that the public were excluded from the use of his car. It is suggested by the learned counsel for the appellants that there is no need in this case to turn to the common law definition of the words "common carrier," nor to the definition contained in the Act of 1914 referred to, and that Chapter 610 of the Acts of 1916 contains the only definition having any direct or specific application to the question. But this suggestion loses sight of the fact that the bill in this case was filed under the authority conferred upon the Public Service Commission by Sec. 28 of the Acts of 1910, Ch. 180, which authorizes the Commission to institute such proceedings when the Commission shall be of the opinion "that a common carrier * * * if failing or omitting, or about to fail or omit to do anything required of it by law, * * * or is doing anything, or about to do anything, or permitting anything or about to permit anything to be done, contrary to or in violation of law," etc. Unless, therefore, the defendant was a "common carrier," *as defined by that Act,* and by Sec. 1½ of Ch. 445 of the Acts of 1914, the bill in this case was not authorized by Sec. 28 of Ch. 180 of the Acts of 1910.

It follows from what we have said that the decree of the Court below must be affirmed.

*Decree affirmed, with costs.*