E. AUSTIN BAUGHMAN, Commissioner of Motor Vehicles, *vs.* PHILIP HERWIG.

*Motor Vehicles—Gasoline Tax—Hiring Cars.*

Acts 1922, ch. 522, known as the "two cent gasoline tax bill," is in substitution for and not in addition to the previously existing method of taxing motor vehicles, except as to such items as are in terms excepted from its operation.          p. 586

The provision of the act that the figure to be certified by the Governor as necessary to make up the difference between the sums derived from the gasoline tax and the receipts from the registration of motor vehicles for a like period "shall be the sum per horse power to be charged and collected in the case of all gasoline propelled motor vehicles equipped with pneumatic tires required by law to be registered in this State in lieu of the rate per horse power now authorized by law," applies to "hiring cars" as well as to other motor vehicles within the terms of the description.          pp. 586-588

*Opinion filed April 10, 1924.*

Appeal from the Superior Court of Baltimore City (Carroll T. Bond, J.).

Petition by Philip Herwig against E. Austin Baughman, Commissioner of Motor Vehicles, for a writ of mandamus. From an order granting the writ, the defendant appeals. Affirmed.

The cause was argued before THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Herbert Levy, Assistant Attorney General,* with whom was *Thomas H. Robinson, Attorney General,* on the brief, for the appellant.

*William Edgar Byrd* and *J. LeRoy Hopkins,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Under the laws of Maryland, prior to the passage of chapter 521 of the Acts of 1922, known as the "One Cent Gasoline Tax Bill," motor vehicles were taxed for the privilege of using the public streets, roads and highways of this State in accordance with a schedule of fees based upon the horse power of the vehicle estimated under a prescribed formula, the use to which the vehicle was to be put, the character of the vehicle, or a combination of these elements. Under that schedule the license fees for different classes of vehicles differed, and that difference was roughly proportioned to the damage, wear and tear occasioned by the use of such roads and highways by the different classes of motor vehicles.

By the "One Cent Gasoline Tax Bill" a new method of taxation was introduced which imposed, in addition to the fees assessed by the schedule above referred to, a tax of one cent per gallon on all gasoline sold within the State for use in the operation of motor vehicles, and not intended for exportation from the State. Inasmuch as the amount of gasoline consumed in the operation of motor vehicles over the highways of the State would bear a direct ratio to the extent of such use, as well as to the weight of the vehicles and the speed at which they were driven, that tax was also propor-

tion to the damage, wear and tear on those highways resulting
from their use by such vehicles. That act did not contemplate
that the scheme of taxation imposed by it should be perma-
nent, but it was a temporary expedient enacted to raise funds
to make good a deficit of $1,179,555.07 in the Maintenance
and Reconstruction Fund of the State Roads Commission
and under its provisions, when the fund collected under it
equalled that sum, the tax would no longer be imposed, and in
any event it would not be exacted later than January 1, 1924.

In connection with the "One Cent Gasoline Tax Bill" the
Legislature enacted chapter 522 of the Acts of 1922, known as
the "Two Cent Gasoline Tax Bill," which was designed to
create a permanent scheme for the taxation of the privilege of
operating motor vehicles over the public roads, streets and
highways of the State, and that plan was intended to be in
substitution for and not in addition to the then existing
methods of taxation. That such was the intention of the
Legislature we think is clear from the language of the title,
the preamble, and the body of the statute.

So much of the act as need be considered here is thus de-
scribed in its title:

> "An act to provide a portion of the revenue neces-
> sary for the maintenance and reconstruction of the
> public highways of the State by imposing a tax on
> motor fuels as herein defined, to be paid by dealers
> as herein defined; with certain rights to refunds as
> herein set forth; regulating the sale of such fuels, pro-
> viding for the report of sales of such motor fuels,
> for the collection of said tax by the Comptroller, and
> for the disposition of the revenue derived therefrom;
> providing also for the raising of another portion of
> the revenue necessary for the maintenance and recon-
> struction of the roads and public highways of the State
> by the charging of fees for markers and certificates of
> registration for motor vehicles, and providing a
> method of determining the charge per horse power
> which shall constitute the basis of such fees; provid-
> ing for the license fees to be paid for solid tire vehi-
> cles."

In the preamble the intent and purpose of the act is set out in the following terms:

"Whereas, The present system of charging license fees for the registration of motor vehicles was designed in part to equalize the burden of maintaining and reconstructing the public roads and highways of the State of Maryland by imposing said burden upon those deriving special benefits therefrom; and

"Whereas, The method of raising revenue for said purpose as outlined in this act will more equitably and generally distribute such burden; and

"Whereas, It is deemed that there is a direct relation between the use of highways by a motor vehicle and the quantity of motor vehicle fuel consumed in furnishing the motive power thereof, as well as a direct relation between the weight of the motor vehicles using such highways and the distance which such motor vehicle will travel by such motive power per unit of weight; and

"Whereas, It is deemed that the weight of the motor vehicle and the distance traveled have a direct bearing on the damage to the highways and the wear thereof; and

"Whereas, It is deemed that the speed at which the motor vehicle is driven over the highways has a direct bearing on the damage to the highways and the wear thereof; and

"Whereas, Laws now in force or enacted have taken into consideration the effect of the weight of the motor vehicles and the speed they attain; and

"Whereas, It is deemed proper by the Legislature that the aforesaid burden of maintaining and reconstructing the public roads and highways of the State should be equitably and generally distributed among those who will be benefited more directly by the expenditure of the revenue derived from this act; and

"Whereas, Such a result in the judgment of the Legislature will be accomplished by levying a tax on the quantity of motor fuel purchased for use in propelling motor vehicles on the public roads and highways of the State as hereinafter provided, *which said*

*tax shall be deemed a substitute* in part for the taxes
and license fee now provided by law as more particu-
larly set out in this act; and

"Whereas, It is considered and deemed that a tax
levied upon each gallon of motor vehicle fuel pur-
chased for use · in motor vehicles is the equivalent of
and in its practical effect a license fee and tax upon
the motor vehicle itself, and the measure of the use
of the highways is in .direct relation to the amount of
motor vehicle fuels consumed in furnishing the motive
power of motor vehicles, and with the license fees and .
taxes provided by other laws of the State of Mary-
land, the tax herein provided more nearly renders
perfect the proper compensation to be paid by the
motor. vehicles for the use of facilities provided at
great cost for the class for whose needs they are essen-
tial and whose operation over the highways are pecu-
liarly injurious."

The act itself provides, first, for the collection of a tax
of two .cents per gallon on all gasoline sold in the State for
use in the operation of motor vehicles and not intended for
exportation from the State, second, for the application of the
fund collected under said tax to the reduction of the fees or
taxes imposed .by then existing schedules in such ratio as the
fund thus collected would bear to the fund collected under
such schedules.; and third, for the imposition of certain fixed
definite and additional fees for certain classes of motor
vehicles, which are very carefully described.

In the body of the act, in the statement of these provisions,
various expressions are used which tend ·to· illustrate and in-
terpret its intention as declared in its preamble, such as the
following:

"If double the amount of net revenue computed as
aforesaid derived from the one cent tax on motor fuels
shall exceed the net receipts from the registration of
gasoline propelled motor vehicles during the afore-
said period, the Governor shall promptly certify that
fact to the Commissioner of Motor Vehicles, and from
and after January 1, 1924, *the registration fees im-*

*posed* by article 56 of the Code of Public General Laws *in the case of gasoline propelled vehicles equipped with pneumatic tires shall no longer be charged or collected, but in lieu thereof* the Commissioner of Motor Vehicles shall charge and collect a registration fee of $1.00 in the case of a gasoline propelled motor vehicle equipped with pneumatic tires owned by a resident of this State and intended to be operated herein. But if twice the sum received from the one cent tax on motor fuels computed as aforesaid shall be less than the net receipts from the registration of gasoline propelled motor vehicles during the same period, then the Governor shall ascertain the ratio which the difference bears to such net receipts from registration, and shall apply such ratio to the 60 cent per horse power now charged in the case of the registration of a gasoline propelled motor vehicle equipped with pneumatic tires, and shall thereby determine the number of cents per horse power which would be necessary to make up such difference. If the result is a fraction of a cent per horse power, then the next nearest and greater whole cent shall be taken. The Governor shall, no later than November 1, 1923, certify the figures so ascertained to the Commissioner of Motor Vehicles, and from and after January 1, 1924, *said figures shall be the sum per horse power* to be charged and collected *in the case of all gasoline propelled motor vehicles equipped with pneumatic tires required by law to be registered in this State in lieu of the rate per horse power* now authorized by law. In either event all existing provisions of law relating to the collection, custody, remittance and use of fees charged for registration of motor vehicles shall be applicable to the new flat registration fee of $1.00 or the new rate per horse power. \* \* \* Provided, however, that nothing herein shall change or alter the license fees now provided by law for vehicles using the public highways of the State and propelled by steam or electricity." Section 12. "Nothing in this act shall be construed to repeal or amend the existing law prescribing the fees to be paid by motor vehicles in the regular transportation

of passengers or freight on fixed schedules." Section
13.

Considering the purpose which the Legislature had in view
as expressed in the language which we have quoted, the
scheme of taxation proposed by the act was, as it clearly
states, intended to be a substitute for the entire scheme of
taxation in force prior to its adoption, except as to such
items as were in terms excepted from its operation. As has
been noted, the "One Cent Gasoline Tax Bill" is an illus-
tration of the imposition of an additional tax, for it provided
for an *additional* tax dedicated to a specific purpose, apply-
ing equally to all vehicles, and abating as soon as the purpose
for which it had been passed was accomplished, whereas the
"Two Cent Gasoline Tax Bill" on the other hand exemplifies
the imposition of substitutional taxation, for it is expressly
declared in it that the tax which it imposes "shall be deemed
a *substitute* in part for the taxes and license fees now pro-
vided by law as more particularly set out in this act." For
the expression "in part for the taxes etc." can only have re-
ferred to such special fees as are by the act imposed in
addition to the gasoline tax and to such part of the fees
provided by the old schedules as should remain after the
deduction of the fund accruing from the two cent tax as pro-
vided in section 12 of the act, since in the act specific pro-
vision is made for the imposition of additional taxes in the
case of all classes of motor vehicles which by reason of their
character will likely cause special damage, wear and tear to
the roads of the State greater than that caused by ordinary
vehicles, or which because of their motive power will not
necessarily use gasoline in travelling over such highways.

And when the Legislature provided that, if the fund col-
lected from the two cent tax should equal the fund collected
under the then existing schedules, "the registration fees im-
posed by article 56 of the Code of Public General Laws in the
case of gasoline propelled vehicles equipped with pneumatic
tires shall no longer be charged or collected, but *in lieu*
thereof the Commissioner of Motor Vehicles shall charge and

collect a registration fee of one dollar," and that if the sum so collected should not be equal to that realized under the old schedules that the Governor should determine and certify the rate per horse power necessary to be charged in order to make up the difference, and that the figure so certified "shall be the sum per horse power to be charged and collected in the case *of all gasoline propelled motor vehicles equipped with pneumatic tires* required by law to be registered in this State in lieu of the rate per horse power now authorized by law," it used language too plain to be disregarded, or to require or admit extrinsic aid in its interpretation.

Philip Herwig, the petitioner in this case, is an undertaker engaged in business in the City of Baltimore. In connection with that business he owns and operates an automobile equipped with pneumatic tires rated at thirty-two horse power. The Governor of Maryland, acting under section 12 of the act above referred to, had certified to the Commissioner of Motor Vehicles thirty-two cents per horse-power as the rate to be charged for the registration of gasoline-propelled motor vehicles equipped with pneumatic tires not operated on a fixed schedule from and after January 1st, 1924.

Under what we have referred to as the old schedule, the petitioner's automobile was properly classified under Class F section 141, article 56 of the Code of Public General Laws of Maryland as a hiring car, and as such, under that schedule, subject to a registration tax of $1.20 per horse power. After the certification referred to, the petitioner applied to the Commissioner of Motor Vehicles for registration of the said automobile, and tendered to him ten dollars and twenty-four cents, the amount due under the new rate of thirty-two cents, in payment therefor, but the Commissioner of Motor Vehicles refused to accept such tender or to issue the proper markers and registration for anything less than the old rate of $1.20 per horse power. Thereupon the petitioner filed a petition for a writ of mandamus in the Superior Court of Baltimore City against the appellant, in which, after stating these facts, he asked that court to issue a writ of mandamus

commanding the appellant to issue to him proper markers
and certificates of registration for 1924 upon the payment of
$10.24. The respondent in his answer asserted that the old
schedule fixing the fees chargeable for the registration of
automobiles classified under ·Class F, section 141, article 56,
*supra*, was not affected by Chapter 522 of the Acts of 1922,
and that under that schedule the proper fee for the registra-
tion of the petitioner's automobile was $38.40, computed at
the rate of $1.20 per horse power, and he based that conten-
tion upon the theory that "there are, and always have been
since the passage of section 141, Class A and Class F, of
article 56 of the Code, two separate and distinct classifica-
tions for purposes of assessment of fees for markers and cer-
tificates of registration, viz.: (1) The 'pneumatic classifi-
cation' (this term being applied to motor vehicles coming
within the provisions of Class A), and (2) the 'hiring car
classification' (this term being applied to motor vehicles com-
ing within the provisions of Class F), and that the latter
classification, namely, the 'hiring car classification,' has not
been affected or changed in any manner by Section 12 of
Chapter 522 of the Acts of 1922, but that section 141, Class
F of article 56, is still in full force and effect in so far as
said 'hiring car classification' is concerned." To that answer
the petitioner demurred. The Court sustained the demurrer
and ordered the writ to issue, and from that order this ap-
peal was taken.

In support of its contention the State argues, first, that
the language used in the act "does not manifest an intent
upon the part of the Legislature to provide a reduction of
the charge for markers and certificates of registration for
hiring cars." In respect to that contention it is sufficient to
say, in view of what has already been said, that the language
employed refers to "*all* gasoline-propelled vehicles equipped
with pneumatic tires required by law to be registered in this
State," and that that phrase undoubtedly includes hiring cars
which are equipped with pneumatic tires and which are re-
quired by law to be registered in this State, and in view of

that language it is idle to discuss whether the Legislature did or did not intend to provide a reduction in the charge for the registration of such cars, since that was the necessary and inevitable consequence of its act.

It is next urged that "there is no legal impropriety in fixing license fees to be paid by 'hiring cars' irrespective of fees required for cars privately owned and operated." The answer to this contention is that whether it is or is not proper to require hiring cars to pay fees "irrespective of fees required for cars privately owned and occupied" is wholly immaterial, since in this case no such distinction has been made.

Again it is contended that "the revenue derived under the 'Two Cent Gasoline Tax Bill' was not intended as a substitute for the revenue derived under section 141 of article 56, but the Legislature intended by said later act to increase the State's revenue by imposing an increased or additional tax on all classes of motor vehicles.

For reason already stated in our opinion, that construction of the act is in direct conflict with its terms and cannot be sustained.

It is for these reasons that the *per curiam* order heretofore filed in this case affirming the order appealed from was passed, and it is in connection with that order that this opinion is filed.