SAMUEL BEVARD, ET AL., *v.* E. AUSTIN BAUGH-MAN, COMMISSIONER.

TRADERS' DELIVERY COMPANY *v.* E. AUSTIN BAUGHMAN, COMMISSIONER.

[Nos. 11, 12, April Term, 1934.]

*Decided June 11th, 1934.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Foster H. Fansecn,* with whom was *Abram C. Joseph* on the brief, for Samuel Bevard and the Manuro Products Company, appellants.

*Edward L. Putzel,* with whom was *Julius H. Wyman* on the brief, for the Traders' Delivery Company, appellant.

*G. C. A. Anderson, Assistant Attorney General,* with whom was *Wm. Preston Lane, Jr., Attorney General,* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

Nos. 11 and 12 were argued together and raise substantially the same question, namely, the constitutionality of chapter 281 of the Acts of 1933. The question was presented by a bill in equity filed by the appellants, wherein they sought to restrain and enjoin the commissioner of motor vehicles, temporarily and permanently, from instituting proceedings for the prosecution of the appellants for operating or permitting the operation during the year 1933 within the State of Maryland of certain motor vehicles described in the bill, without the payment of any registration or license fees therefor other than or in addition to those theretofore paid; that the commissioner of motor vehicles be commanded either to revoke the cancellation of the licenses issued as aforesaid to the complainants, or to renew the same for the balance of the year 1933 without the payment of any registration or license fees therefor other than or in addition to those theretofore paid; that the right of complainants to operate within the State of Maryland during the year 1933 without the payment of any registration or license fees therefor, other than or in addition to those theretofore paid, may be established; and that chapter 281 of the Acts of 1933 may be construed and be declared to be an invalid and unconstitutional exercise of legislative powers upon the part of the General Assembly of Maryland, as being in conflict with both the Maryland Bill of Rights and the Constitution of the United States. The appeal in each case is from an order of Circuit Court No. 2 of Baltimore City, where-

in it was ordered and directed that the preliminary injunction theretofore issued be dissolved, the permanent injunction refused, and the bill of complaint dismissed.

For the purposes of decision in these cases, chapter 281 may be thus summarized: (1) It segregates commercial motor vehicles, operating without a Public Service Commission permit in the transportation of freight or merchandise for hire, into separate classes: (2) it levies a tax upon each vehicle in a class, the tax being graduated according to the shipping weight of the chassis of each vehicle in pounds.

The title of chapter 281 of the Acts of 1933 is: "An Act to repeal and re-enact, with amendments, Section 182 of Article 56 of the Code of Public General Laws of Maryland, 1929 Edition, title 'Licenses,' sub-title 'Fees for Registration of Motor Vehicles'; to repeal and re-enact, with amendments, Section 194 of Article 56 of the Code of Public General Laws of Maryland, 1929 Edition, title 'Licenses,' sub-title 'Speed, Size, Weight, Construction and Equipment of Motor Vehicles,' for the purpose of dividing commercial motor vehicles operating for hire and driven by motor fuel or electricity equipped with pneumatic tires, and solid tires, into various classes, and taxing such vehicles according to classes; and for the purpose of dividing trailers and semi-trailers equipped with rubber tires into various classes and taxing according to class, and defining the gross weight which can be carried by each such class of motor vehicles, trailers and semi-trailers."

Section 182 provides: "The following fees shall be paid per annum to the Commissioner of Motor Vehicles for the markers and certificates of registration issued by him in accordance with the provisions of this sub-title." The act then provides for classifications designated from A to K, inclusive. Class A designates the license fees for motor vehicles with pneumatic tires, with the exception of those operating without a Public Service Commission permit in transportation of freight or merchandise for hire, and fixes the fee at thirty-two cents per horse power *per an-*

*num.* (Prior to the effective date of chapter 281 the license fee for all motor vehicles equipped with pneumatic tires operating without a Public Service Commission permit was fixed at thirty-two cents per horse power *per annum.*) Motor vehicles equipped with pneumatic tires and used commercially, that is, when engaged in the transportation of freight or merchandise for hire, are further subdivided according to whether or not they have two or three axles, and whether or not they are operated electrically or by internal combustion engines. In each of these classes the fee is fixed by the weight of the chassis of the motor vehicles in their respective classes. General class B, as defined by the act, provides for license fees for solid tire vehicles, and provides a different license fee for such vehicles, dependent upon whether they are propelled by internal combustion engines or by power other than that generated by internal combustion engines.

Section 194 regulates the speed, size, weight, construction, and equipment of motor vehicles.

The record discloses that the appellants in No. 11 are the owners of pneumatic tired motor trucks in which they haul the goods of others for compensation.

The complaint of the appellants in both cases is based upon what they allege to be an improper, arbitrary, and unreasonable classification in two respects: First, that a distinction is made between commercial motor vehicles with pneumatic tires operated for hire, and the same kind of vehicles not operated for hire; and, second, that a distinction is made in favor of solid tired vehicles as against pneumatic tired vehicles operated for hire.

The real question to be determined, therefore, is whether or not the Legislature, in making a classification which results in a larger fee being exacted from the owner of an automobile engaged in transporting freight or merchandise for hire, than from the owner of the same automobile not engaged in carrying freight or merchandise for hire, and the further classification of commercial vehicles, that is, those operating for hire, into those equipped with pneumatic tires and those equipped in part

or in whole with solid tires, has acted arbitrarily and unreasonably. In other words, the complainants in the first case, in effect, say two things: First, that "I own an automobile truck equipped with pneumatic tires, with which I haul my own produce or merchandise, and I have identically the same automobile truck which I use in the transportation of freight and merchandise, belonging to others, for hire; and the action of the State in requiring a larger fee for the one which I use in transportation for hire than for the one which I use for pleasure or transporting my own products or merchandise, has no reasonable basis, and therefore is arbitrary and invalid"; and, second, that "I have an automobile truck engaged in transportation for hire, equipped with pneumatic tires, and I have another truck of exactly the same model, size and weight, the only difference being that it is equipped wholly or in part with solid tires; and the action of the State in imposing and collecting a larger license fee for the truck equipped with pneumatic tires than for the one equipped with solid tires, is also unreasonable, arbitrary and illegal."

The action of the State in classifying and fixing the fees to be paid for the operation of motor vehicles in Maryland, beginning with the original act in 1906, has been a growth culminating in the Act of 1933, chapter 281, which is now being attacked. Chapter 449, section 131, of the Acts of 1906, provided that the owner of a motor vehicle should pay a flat fee of $3 per vehicle. By the Act of 1910, ch. 207, sec. 136, this blanket form of fee was changed to a graduated fee, depending upon the horsepower of the vehicle, that act providing for a fee of $6 per annum for each motor vehicle with a rating of 20 horsepower or less, $12 per annum for one with a rating of more than 20 horse-power and less than 40 horse-power, and $18 per annum for one with a rating of more than 40 horse-power. The Act of 1912, ch. 133, continued this graduated horse-power rating system, and made a slight modification in the rate per horse-power. That method of taxing motor vehicles on a horse-power rating basis has

continued without interruption from its inception in 1912 to the present time, in so far as pleasure cars are concerned. See chapter 281, class A, Acts of 1933. The Act of 1916, ch. 687, sec. 141, created a class of "for hire" vehicles, and provided a separate tax against this class, the fee for hire vehicles being 50 cents per horse-power or fraction thereof in the case of all motor vehicles having pneumatic tires, with a minimum charge of $5 for any motor vehicles, and $1 per horse-power or fraction thereof in the case of all motor vehicles operating for the purpose of transporting persons for hire. In addition to the above, there was passed at this same session of the Legislature chapters 610 and 714 of the Acts of 1916. Chapter 714 segregated into a separate class, and taxed as a separate class, vehicles operating in the "public transportation of merchandise or freight." Vehicles in this class were, in turn, divided into three separate weight classes, and taxed according to weight. Chapter 610 segregated into a separate class and taxed as a separate class, motor vehicles operating in the "public transportation of passengers for hire." It will thus be seen that after the effective dates of the Acts of 1916, motor vehicles were segregated and taxed as: (1) "For hire" passenger vehicles; (2) vehicles used in the public transportation of passengers for hire; (3) vehicles used in the public transportation of freight or merchandise; (4) noncommercial vehicles. The tax on vehicles engaged in the public transportation of passengers for hire and the public transportation of freight or merchandise was computed upon a weight basis or capacity seat basis. From the year 1916 until the Act of 1927 there was no essential change made in the vehicle tax laws of the state. By chapter 152, sec. 259, of the Acts of 1927, there was created a separate class, taxed as a separate class, of all "for hire" carriers of freight and merchandise operating between fixed termini and on a regular schedule.

The foregoing is roughly a résumé of the statutory legislation of the State in reference to license fees for motor vehicles up to the act now in question. This act places

all commercial motor vehicles operating for hire in the transportation of freight or merchandise in the same class, taxing each vehicle according to weight classification. As a result of the Act of 1933 there are the following classes of motor vehicles, taxed according to each class: (a) Commercial motor vehicles engaged in the public transportation of passengers for hire. (b) Commercial motor vehicles transporting freight or merchandise for hire between fixed termini or on regular schedule, and required to have a Public Service Commission permit. (c) Commercial motor vehicles transporting freight or merchandise for hire, but not operating on a regular schedule or between fixed termini, and not required to have a Public Service Commission permit. (d) Vehicles carrying passengers "for hire," that is, taxicabs.

By tracing the history of this legislation it will be seen that, from 1916 until 1933, vehicles using the roads of the state as a place of business have been placed in separate categories or classes, and taxed at a different rate basis from other vehicles; and further, that from 1916 a computation of taxes based on weight has been followed. This legislation has been passed upon in one form or another in many cases since 1912.

In the case of *Ruggles v. State*, decided in 1913, 120 Md. 553, 87 A. 1080, 1082, the constitutionality of the Act of 1912 was challenged. That act provided that a license fee for operating a motor vehicle in the state should be $2, while the fee for a chauffeur's license should be $5 annually. It was contended in that case that an illegal distinction was drawn between a commercial operation and a non-commercial operation, and therefore the act was unconstitutional, was an arbitrary classification dividing commercial operators from non-commercial operators, and denied the equal protection of the law. It was also contended that the act violated the fourteenth amendment of the Federal Constitution and the twenty-third article of the Declaration of Rights of Maryland. In dealing with the question, Judge Urner, speaking for the court, said: "The validity of the statute is next assailed on the ground that

it unduly discriminates against those who operate motor vehicles for salary, wages, hire, or profit, thereby denying to them the equal protection of the law, contrary to the fourteenth amendment of the Federal Constitution." In denying the validity of such a contention the court said: "But in any event the validity of this provision can be readily sustained as an exercise of the well recognized power of the state to impose license taxes upon occupations within its limits. *State v. Applegarth,* 81 Md. 300, 31 A. 961; *Rohr v. Gray,* 80 Md. 276, 30 A. 632; *Mason v. Cumberland,* 92 Md. 461, 48 A. 136; *Meushaw v. State,* 109 Md. 91, 71 A. 457; *License Tax Cases,* 5 Wall. 462, 18 L. Ed. 497; *Welton v. Missouri,* 91 U. S. 278, 23 L. Ed. 347; 25 *Cyc.* 599. This consideration disposes also of the additional objection urged that the exaction of a special license fee in the case of those who operate motor vehicles for salary, wages, hire, or profit deprives the defendant of his property without due process of law, contrary to the fourteenth amendment of the Constitution of the United States, and of the twenty-third article of the Declaration of Rights of Maryland." In that case the court recognized the legitimate and legal distinction between a commercially operated and a non-commercially operated automobile, and the right to tax each at a different rate.

The case of *Grossfeld v. Baughman, Commissioner,* 148 Md. 330, 129 A. 370, was an appeal from an order dismissing a petition for a writ.of mandamus against the commissioner of motor vehicles. Chapter 412 of the Acts of 1924 directed the commissioner of motor vehicles to refuse the issuance or transfer of title to any motor vehicle in the City of Baltimore, unless the taxes of the transferor upon the motor vehicle were paid. By that act commercial vehicles were specifically segregated into a separate class, and exempted from the provisions of the act. The same attack was made upon the constitutionality of that act as is now being urged here. This court, speaking through Judge Parke, at page 334 of 148 Md., 129 A. 370, 372, said: "The appellants contend that the act is unconstitutional (1) because it deprives the citizen

of his property without due process of law; (2) because it denies to the citizen of Maryland the equal protection of the law; (3) because it violates the constitutional right to the citizen of uniform taxation; (4) because it 'infringes fundamental principles of right and justice.' * * * In support of this position, provisions of article 14 of the Constitution of the United States, articles 23, 15, and 45 of the Declaration of Rights, and article 3, sec. 33, of the Constitution of Maryland, are invoked." In considering these objections the court said "The power to tax is inherent in sovereignty. The method of its imposition is, however, a proper subject of inquiry, and it must survive the test of uniformity and equality. If, however, a law provides for the classification of the property, subject to its operation into different classes, and makes for one of these classes particular provisions so as to enforce the payment of the taxes on that class of property through regulatory inhibitions on its use and devolution of title, the requirement of equality and uniformity of procedure is met, if the provisions have impartial application to all members of this class so that the law shall operate equally and uniformly on all persons in similar circumstances."

In the case of *Restivo v. Public Service Commn.*, 149 Md. 30, 129 A. 884, the defendant was operating a regular passenger service between two points in the State of Maryland without first obtaining a permit from the Public Service Commission. He alleged that he was a private carrier, and as such was not subject to the Public Service Commission. This contention was denied by the lower court in a decree refusing an injunction against the Public Service Commission. The ruling was affirmed on appeal by this court, and in an opinion by Judge Walsh the court clearly recognized that, from the beginning of this class of legislation, a distinction has been made and approved between commercial motor vehicles for hire and other motor vehicles, and that each may be taxed as a separate and distinct class. It was also there held that such classification was not obnoxious to any constitutional pro-

vision; the court saying: "Nor do we find any merit in the appellant's contention that the regulations imposed by the Public Passenger Motor Vehicle Law are unconstitutional, or that the refusal to grant an injunction in this case will permit a taking of the appellant's property without due process of law, within the meaning of the fourteenth amendment to the Constitution of the United States."

In the case of *Public Service Commn. v. Western Md. Dairy*, 150 Md. 641, 135 A. 136, 138, the sole question was whether the Western Maryland Dairy was operating milk trucks within the provisions of the Public Freight Motor Vehicle Law. The lower court held that the operation was not within the provisions of that act; and on appeal the ruling was reversed, this court, speaking through Judge Pattison, saying: "That the enforcement of the act here involved will not result in the taking of the appellee's property without due process of law within the meaning of the fourteenth amendment of the Constitution of the United States is too well established to require discussion. See *Restivo v. Public Service Commission*, supra, and the cases cited therein."

In the case of *Rutledge Co-operative Assn. v. Baughman, Commissioner*, 153 Md. 297, 138 A. 29, the contention was that the appellant, a co-operative association carrying its members' milk products for hire on a regular schedule or between fixed termini, could not be required to pay a per ton mileage tax or obtain a permit from the Public Service Commission; and that the act providing for such permit and such fee was unconstitutional. In discussing this question, speaking of the appellant, the court said: "Its business requires it to use for private gain the public highways of the state, which are maintained by the general public. The incidental effects of its operation are identical with those of common carriers operating under section 258, article 56, Bagby's Code, the wear and tear on the highways is the same, the danger to the traveling public is the same, the difficulty of maintaining reasonable rates and adequate service in the face

of severe and exhausting competition is the same, and the appropriation of public property for private gain is the same. Under such conditions we know of no constitutional principle which prohibits the Legislature from characterizing such a business as public, and in our opinion section 259, article 56, *Id.*, which does only that and no more, is a valid exercise of legislative power."

See, also, *Red Star Line v. Baughman, Commissioner,* 153 Md. 607, 139 A. 291, wherein it was held that, as the license fees are chargeable to residents and nonresidents alike, it was not offensive to the provisions of the equal protection clause of the Constitution of the United States (fourteenth amendment). Citing *Power Mfg. Co. v. Saunders,* 274 U. S. 490, 47 S. Ct. 678, 71 L. Ed. 1165; *Hendrick v. Maryland,* 235 U. S. 610, 36 S. Ct. 140, 59 L. Ed. 385.

In the latest case, of *Parlett Co-operative, Inc., v. Tidewater Lines, Inc.,* 164 Md. 405, 165 A. 313, the court, speaking through Judge Offutt, uses this language: "It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes; and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit. *Packard v. Banton,* 264 U. S. 140, 144, 44 S. Ct. 257, 68 L. Ed. 596, 607, and cases cited; *Frost & F. Trucking Co. v. Railroad Commission* 271 U. S. 583, 592, 593, 46 S. Ct. 605, 70 L. Ed. 1101, 1104, 1105; *Hodge Drive-It-Yourself Co. v. Cincinnati,* 284 U. S. 335, 337, 52 S. Ct. 144, 76 L. Ed. 323, 326; *Johnson Transfer & Freight Lines v. Perry* (D. C.) 47 Fed. (2nd) 900, 902. * * * And it would indeed be strange if it were otherwise. For, as pointed out in the case last cited, the highways of the state are public property. They are established and maintained at public expense for the use of the whole people, primarily as avenues of communication for their private uses, and their use for private gain is 'special and extraordinary.' "

See, also, *Smith v. State,* 130 Md. 482, 100 A. 778; *Swann v. Baltimore City,* 132 Md. 256, 103 A. 441; *Tow-*

*ers v. Wildason,* 135 Md. 677, 109 A. 471; *Goldsworthy v. Public Service Commission,* 141 Md. 674, 119 A. 693; *Havre De Grace v. Johnson,* 143 Md. 601, 123 A. 65; *Baughman, Commissioner, v. Herwig,* 145 Md. 580, 125 A. 825; *Kane v. New Jersey,* 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222; *Clark v. Poor,* 274 U. S. 554, 47 S. Ct. 702, 703, 71 L. Ed. 1199. In the last-mentioned case the Supreme Court said: "The highways are public property. Users of them, although engaged exclusively in interstate commerce, are subject to regulation by the state to ensure safety and convenience and the conservation of the highways. *Morris v. Duby,* 274 U. S. 135, 47 S. Ct. 548, 71 L. Ed. 966; *Hess v. Pawloski,* 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091. Users of them, although engaged exclusively in interstate commerce, may be required to contribute to their cost and upkeep. Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use."

From the authorities above referred to, it must be taken as settled, in this state at least, that a classification made by the Legislature which embraces all persons engaged in operating motor vehicles in the transportation of freight or merchandise for hire is a reasonable and legal exercise of the legislative power, and that an additional or greater fee can be exacted of persons operating motor vehicles in such manner and for such purposes. It follows, therefore, that we find no constitutional objection to such a classification by the Legislature and the requirement of a different or larger license fee for the operation of motor vehicles engaged in transporting freight or merchandise for hire along and over the public highways of the state.

We come now to the second classification objected to, namely, motor vehicles operated in the transportation of freight or merchandise for hire, equipped with pneumatic tires, being put in a subclassification, and vehicles otherwise identical, equipped in whole or in part with solid tires, in another subclassification, with a smaller license fee charged for the operation of a solid tire vehicle

than for one equipped with pneumatic tires. The general rule in respect to the power of the Legislature to classify for the purpose of license fees is that primarily the question of classification is for the Legislature; and courts will not interfere unless the classification is clearly unreasonable or arbitrary. See *People v. Metz,* 193 N. Y. 148, 85 N. E. 1070; *Berry on Automobiles* (6th Ed.) p. 37, and cases there cited. A state or municipality may classify the various subjects which it is authorized to license, provided the classification is natural and real, and not arbitrary or fanciful, and is properly based upon the use to which such vehicles are devoted, rather than the value of the vehicle. Nor has the provision relating to uniformity of taxation any application, for that part of the Constitution (Declaration of Rights, art. 15)· relates to a general assessment for taxation on property according to its value, and not to the imposition of a license tax required for the privilege of using the roads. If the classification is made on some reasonable basis, and is applicable without discrimination to all similarly situated, it is valid. *Berry on Automobiles,* 114; *City of Seattle v. King,* 74 Wash. 277, 133 P. 442; *Park v. City of Duluth,* 134 Minn. 296, 159 N. W. 627.

Section 194, chapter 281 of the Acts of 1933, under the subtitle "Speed of Solid Tire Motor Vehicles, and Size, Weight, Construction and Equipment of Motor Vehicles," provides: "The maximum rate of speed for motor vehicles, equipped wholly or in part with solid tires, weighing six tons or less, shall be twenty-five miles per hour. The maximum rate of speed for motor vehicles, equipped wholly or in part with solid tires, weighing in excess of six tons, shall be twenty miles per hour." Motor vehicles equipped in whole or in part with other than solid tires are permitted to operate at a greater rate of speed. With such provision as to speed in effect, it was reasonable and logical for the Legislature to conclude that motor vehicles of the same weight, equipped with pneumatic tires, and therefore to operate at greater speeds, consequently having a wider range of operation and covering many

more miles per hour, would do greater damage to the roads than those equipped with solid tires. Again, it can be logically concluded that pneumatic tires do greater damage to the roads by reason of the suction incident to that type of tire, especially on roads that are not improved with a hard surface. It is common knowledge that motor trucks equipped with pneumatic tires, operating over dirt or gravel roads, do much greater damage to the surface thereof than solid tire trucks.

The only testimony contained in the record is that offered by the appellants, which is uncontradicted, to the effect that solid tires are more destructive to the roads than pneumatic tires. This testimony was the opinion of the witness, and while, as stated, it is uncontradicted, it cannot be held to control the decision of this question against the constitutionality of the statute, when there is any reasonable basis upon which the Legislature could have reached a different conclusion. We have said that there is a reasonable basis for a contrary conclusion by the Legislature, and therefore that their classification and difference of license fees between pneumatic tires and solid tires, in favor of solid tires, is not so unreasonable and arbitrary as to warrant the court in striking down the legislation in question. It cannot be that courts must accept the testimony of a single or any number of witnesses who express their opinion as contrary to the opinion of the Legislature with a reasonable basis for its conclusion. We therefore conclude that this classification is a reasonable and proper exercise of the Legislature's power in that regard.

The appellants do not deny that the law is uniform within the subdivisions of the class, but contend that there is no logical basis for the classification. The act distinguishes and defines a class, and imposes an excise or license fee uniformly upon all persons answering to said definition. Such classification need not be scientifically accurate, provided it applies impartially and uniformly within the class. *Mark v. District of Columbia,* 37 App. D. C. 563; *District of Columbia v. Brooke,* 214 U. S. 138,

29 S. Ct. 560, 53 L. Ed. 941. The case of *Smith v. Cahoon*, 283 U. S. 556, 51 S. Ct. 582, 75 L. Ed. 1272, upon which the appellants to a large extent rely, in our opinion does not support their contention. In that case the distinction or difference in the license to operate a motor truck was not based upon differences in construction, equipment, or mode of operation, but was based solely upon the commodity which was being transported; the distinction in the cost of license being based upon the alleged difference between a truck hauling fruit and fish as against one hauling bread and meat. It is apparent that there could be no possible difference, in the damage done to the roads maintained at public expense, between two identical trucks, one being loaded with a ton of fish or fruit, and the other being loaded with an equal amount of meat or bread. In other words, there was no logical difference between the two, relative to the use of the roads, for the construction and maintenance of which the license fee was exacted. Such an alleged distinction is analogous to charging all motor vehicles painted green one fee, and those painted black a different fee. Such attempted classification would be so clearly arbitrary and unreasonable that the courts, as was done in the case of *Smith v. Cahoon, supra,* would strike down the classification.

As stated, the license fee here in question is not a tax on property, and does not require uniformity as to value. *State v. Applegarth,* 81 Md. 293, 31 A. 961; *Mason v. Cumberland,* 92 Md. 451, 48 A. 136; *Keller v. State,* 11 Md. 526; *Ruggles v. State,* 120 Md. 553, 87 A. 1080, 1083; *Storaasli v. Minnesota,* 283 U. S. 57, 51 S. Ct. 354, 75 L. Ed. 839.

The next question raised is as to the sufficiency of the title. We have heretofore set forth in full the title to the act, which is, to repeal and re-enact with amendments section 182 of article 56 of the Code, title "Licenses," subtitle "Fees for Registration of Motor Vehicles," and section 194 of the same article, subtitle "Speed, Size, Weight, Construction and Equipment of Motor Vehicles." In *Ruggles v. State, supra,* this court, in dealing with the

same article and a different section, said: "This provision forms a part of section 138 of article 56 of the Code of Public General Laws, title 'Licenses,' subtitle 'Motor Vehicles,' and the title of the act of 1912 describes the subject of its enactments by reference to the article and sections of the Code in which they are incorporated. This has been frequently held to be a sufficient description, and there can be no doubt that the provision in controversy is germane to the general subject to which the title refers. *State v. Loden,* 117 Md. 373, 83 A. 564; *Bond v. Baltimore,* 116 Md. 683, 82 A. 978; *Curtis v. Mactier,* 115 Md. 386, 80 A. 1066; *Worcester County v. School Commrs.,* 113 Md. 309, 77 A. 605; *Kingan Packing Assn. v. Lloyd,* 110 Md. 619, 73 A. 887; *Anne Arundel County v. United Railways Co.,* 109 Md. 377, 72 A. 542; *Baltimore v. Reitz,* 50 Md. 574; *Drennen v. Banks,* 80 Md. 316, 30 A. 655." The title to the act now in question not only refers to it as an act to repeal and re-enact with amendments certain sections of the designated article of the Code, but it is difficult to conceive of a title which would more fully apprise all persons dealing with the legislation of what is contained within the law itself. The case of *Ruggles v. State,* supra, and cases there cited, conclusively dispose of this question against the contention of the appellants, and establish the title here in question as fully complying with the requirements of the State Constitution in this regard.

The law here under consideration was passed as an emergency act, was so declared by the Legislature, and passed by the required three-fifths of all the members elected to each of the houses of the General Assembly, as required by article 16 of the Maryland Constitution. The provisions of the act are specifically within the provisions of section 2 of article 16 of the Constitution, determining what shall be an emergency law, and the subject matter of the legislation is not among those prohibited by article 16 of the Constitution from being enacted as an emergency law. *Read Drug & Chemical Co. v. Claypoole,* 165 Md. 250, 166 A. 742; *Culp v. Chestertown* ,154 Md. 620, 141 A. 410.

In respect to the court's ruling on evidence, it is only sufficient to say that, in the view which we have taken of the case, it could make no difference in our conclusion had the evidence ruled out been admitted; and for that reason it is unnecessary to discuss or pass upon the correctness of that ruling. That evidence, generally, was an effort to show discrimination between the appellants and one engaged in the same or similar business, but using trucks equipped with solid tires. We must find the act unconstitutional, if at all, upon the provisions of the act itself. The statute here distinctly makes separate classification of pneumatic tired trucks and those equipped wholly or in part with solid tires; and no evidence of its having been applied in accordance with that classification would add to or detract from the statute itself, upon a consideration of the constitutionality of such classification.

We have not in this opinion dealt with the question of whether or not the operation carried on by the appellants constituted the operation of transporting freight or merchandise for hire, for the reason that that question was disposed of by the opinion in *Baughman v. Sterrett Operating Service, Inc., ante,* p. 50, 173 A. 38.

Finding no error, the orders of the chancellor will be affirmed.

> *Order in No. 11 affirmed, with costs to the appellee.*

> *Order in No. 12 affirmed, with costs to the appellee.*